## THE WISCONSIN.[1]

### (*District Court, E. D. New York.* January 6, 1885.)

COLLISION—STEAMER AND BARK—MISTAKE AS TO LIGHTS—FLARE-UP—BLUE LIGHT —PILOT SIGNAL.

Where a steamer was approaching a bark in the night, and the bark exhibited a flare-up light, which was seen on the steamer, and those on the steamer supposed the other vessel to be a pilot-boat desiring to put a pilot on board, and the steamer showed a blue light, to which the bark replied by a flare-up, and the steamer did not discover her mistake until too late to avoid a collision, *held,* that, besides the fact that the green light of the bark was proved to be so dim as to render it invisible to the steamer at a distance sufficient to enable her to avoid the bark, which of itself was sufficient to prevent a recovery by the bark, it was also a fault on the part of the bark to exhibit the flare-up after the steamer had burned the blue light; and as there was no fault proved on the part of the steamer, the bark's libel against the steamer was dismissed.

In Admiralty.

*Scudder & Carter* and *Owen & Gray,* for libelants.

*Beebe & Wilcox,* for claimants.

BENEDICT, J. The cause of the collision which gave rise to these actions was the opinion formed by those in command of the steamer that the lights exhibited by the bark were the lights of a pilot-boat desiring to put a pilot on board the steamer, when in fact the lights were those of a bark holding her course. The night was dark, but good for seeing lights. The bark exhibited a flare-up light, which was seen by those in charge of the steamer in abundant time to avoid the bark, and from that time the lights of the bark were watched with the aid of glasses as well as with the naked eye by several competent persons on board the steamer, including the master, and all supposed the light to be the flare-up of a pilot-boat until the bark was too near to enable the steamer to avoid the collision.

The case is not one of an inattentive lookout on the steamer, but one where the lookout saw the light, and was misled by it; and the question of the case is whether the opinion that the approaching vessel was a pilot-boat, which was formed and acted upon by those in charge of the steam-ship, was justified by the circumstances. If so, the steam-ship cannot be held in fault.

In addition to the flare-up light shown, the bark carried a green side light. This light was seen by those on board the steamer, but not until it was too late to correct their mistake in regard to the character of the approaching vessel, and when collision was inevitable. The testimony in regard to the green light of the bark, in connection with evidence of the lantern itself, warrants the conclusion that the light was so dim as to render it invisible to the steamer at a distance sufficient to enable the steamer to avoid the bark. This condition of the bark's green light is of itself sufficient to prevent a recovery by the bark.

[1] Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

But another fault on the part of the bark also appears. It is proved, and not disputed, that when the bark displayed her flare-up light to the steamer, the steamer burned 'a blue light. This blue light was seen on board the bark, and replied to by a flare-up. It was not a fault in the bark to display the flare-up that was displayed before the blue light was burned, but it was fault to display a flare-up after the blue light of the steamer was seen, for the blue light was notice to the bark that her flare-up had been taken by the steam-ship to be the flare-up of a pilot. It was also notice to the bark that she was seen by the steamer. There was no need, therefore, for the bark exhibiting the flare-up a second time, and the action of the bark in answering the steamer's blue light with a flare-up was, under the circumstances, equivalent to notice from the bark to the steam-ship that the approaching vessel was a pilot-boat, intending to put a pilot on board the steamer. In this way the mistaken opinion of those on board the steam-ship was confirmed by the bark, when, as I cannot doubt, the absence of a reply to the steamer's blue light would have corrected the mistake and prevented the collision.

It is said that the steam-ship, even if she supposed the approaching vessel to be a pilot-boat, had no right to run her down; but, the steam-ship, led by the bark to believe that she was a pilot-boat desiring to put a pilot on board, had the right to come close to the supposed pilot-boat, and to believe that the pilot-boat would also draw near to her, and to assume that any one of that active class of vessels would co-operate with her in the effort to bring the vessels close to each other in safety. When, therefore, the steam-ship burned a blue light and slowed down, and changed her course nearer to the supposed pilot-boat, and stopped her engines and backed on discovering her mistake, she did all that it was possible for her to do under the circumstances to avoid running down the bark, and was guilty of no fault.

My conclusion therefore is that the collision in question was caused by fault on the part of the bark, and not by fault on the part of the steamer.

Let the libels be dismissed, and with costs.